**AUTO–OWNERS INSURANCE COMPANY, Appellee,**

v.

**MERILLAT et al., Appellant.**

[Cite as *Auto–Owners Ins. Co. v. Merillat,* 167 Ohio App.3d 148, 2006-Ohio-2491.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–05–027.

Decided May 19, 2006.

Robert J. Bahret and Keith J. Watkins, for appellee.

Curtis J. Sybert and Benjamin Scherner, for appellant.

SKOW, Judge.

{¶ 1} Appellant, Nicholas T. Merillat, appeals the judgment of the Fulton County Court of Common Pleas that granted summary judgment to appellee, Auto–Owners Insurance Company ("Auto–Owners"), on its complaint seeking a declaratory judgment on a policy of insurance. Auto–Owners' named insureds were David and Angela Towers. Aaron Towers, David Towers's son and a minor at the time, was driving a car that was involved in a one-car accident in Fulton County, Ohio. Although Aaron Towers was a defendant below, he is not a party to this appeal. Merillat, a passenger in the car, sustained serious injury.

{¶ 2} In this accelerated appeal, Merillat asserts a sole assignment of error:

{¶ 3} "The trial court erred to the prejudice of the defendant-appellant in granting summary judgment in favor of the plaintiff-appellee."

{¶ 4} The trial court determined, without legal analysis, factual reference, or citation of authority, that neither Aaron Towers nor appellant was entitled to coverage under David Towers's policy with Auto–Owners, based on the "clear meaning" of the policy language. For the following reasons, we reverse.

{¶ 5} In reviewing a grant of summary judgment, an appellate court employs a de novo standard of review, the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. A de novo review is conducted without deference to the trial court's decision. *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701

N.E.2d 1023; *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. Summary judgment is properly granted when the evidence, construed most strongly in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact and that reasonable minds can come to only one conclusion. Civ.R. 56(C).

■ {¶ 6} This matter compels reiteration of the axiomatic rule that "evidence must be strongly construed in favor of the nonmoving party." *Ferrando v. Auto–Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 190, 2002-Ohio-7217, 781 N.E.2d 927. Throughout the summary-judgment analysis, all inferences from the evidence must weigh in the nonmoving party's favor. Initially, the moving party must demonstrate that "there are no genuine issues of material fact concerning an essential element of the opponent's case." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Either party may carry its burden by pointing to evidence listed in Civ.R. 56(C), which includes "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any." Id. at 293, 662 N.E.2d 264. "While the movant is not necessarily obligated to place any of these evidentiary materials in the record, the evidence must be in the record or the motion cannot succeed." Id. "Unsupported allegations in the pleadings do not suffice to necessitate the denial of a summary judgment." *Harless v. Willis Day Warehousing* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. If the moving party fails to carry its initial burden, the motion for summary judgment must be denied. Id. If, however, the moving party "affirmatively shows that the nonmoving party has no evidence to support that party's claims," then the nonmoving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." Id., citing Civ.R. 56(E). Only if the nonmoving party fails to carry its reciprocal burden may judgment as a matter of law be entered in the moving party's favor.

{¶ 7} The policy provisions at issue state:

{¶ 8} "SECTION I—DEFINITIONS

{¶ 9} " * * *

{¶ 10} "9. **Relative** means a person who resides with you and who is related to you by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with you.

{¶ 11} " * * *

{¶ 12} "12. **You** or **your** means the first named **insured** shown in the declarations and if an individual, your spouse who resides in the same household.

.

{¶ 13} "13.  **Your automobile** means the **automobile** described in the Declarations.

{¶ 14} " * * *

{¶ 15} "SECTION II—LIABILITY COVERAGE

{¶ 16} " * * *

{¶ 17} "We will pay damages for **bodily injury** and **property damage** for which you become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** (that is not a **trailer**) as an **automobile**. We will pay such damages:

{¶ 18} "(1) on **your** behalf;

{¶ 19} "(2) on behalf of any **relative** using **your automobile** (that is not a **trailer**);

{¶ 20} "(3) on behalf of any person using **your automobile** (that is not a **trailer**) with **your** permission or that of a **relative**; * * *

{¶ 21} " * * *

{¶ 22} "SECTION IV—INDIVIDUAL NAMED INSURED

{¶ 23} " * * *

{¶ 24} "The Liability Coverage provided for **your automobile** (that is not a **trailer**) also applies to an **automobile** (that is not a **trailer**) not:

{¶ 25} "(1) owned by or furnished or available for regular use to **you** or anyone living with **you**.  However, we will cover **your** liability for **your** use of an **automobile** (that is not a **trailer**) owned by or furnished for the regular use of a **relative**.

{¶ 26} "(2) * * *

{¶ 27} "We extend this coverage only:

{¶ 28} "(1) to **you**;

{¶ 29} "(2) to **relatives** who do not own an **automobile** (that is not a **trailer**); and

{¶ 30} "(3) to anyone legally responsible for the use of the **automobile** (that is not a **trailer**) by the persons in (1) and (2) above."  (Boldface sic.)

{¶ 31} Appellee argues that summary judgment was proper for two reasons: (1) Aaron Towers is not an insured under David and Angela Towers's policy and (2) Diane Towers's car is not a vehicle covered by the policy.  The record contains scant evidence.  Auto–Owners attached a copy of David and Angela Towers's policy to its complaint and attached a copy of the accident report to its motion for summary judgment.  To his motion for summary judgment, Merillat

attached a copy of the judgment entry of David and Diane Towers's divorce. From these documents, we glean the following facts:

{¶ 32} David Towers and Aaron Towers's mother, Diane Towers, were divorced in 1991. Diane was granted legal custody of Aaron, and David was granted visitation privileges. Aaron was driving Diane Towers's car when the accident occurred, and Merillat was his passenger. The accident occurred at approximately 3:00 a.m., after Aaron and Merillat had left an "after-prom" party for a local high school, according to a witness who had seen them at the party and who came upon the accident scene. Aaron and Merillat were transported to St. Vincent's Hospital.

{¶ 33} Appellee first argues that Aaron Towers was not an insured under David Towers's policy because he was neither a named insured nor did he "reside" with David Towers. Pursuant to the divorce decree, Diane was named Aaron's custodial parent. Appellant responds (1) that a genuine issue of fact exists because no evidence (beyond the 15–year–old divorce decree) demonstrates with whom Aaron resides and (2) that even if David Towers had only visitation rights with Aaron, those visits may constitute "residing" for the purposes of establishing policy coverage.

{¶ 34} Appellee concedes that under some circumstances, a minor child of divorced parents may reside at either or both parents' homes when the child's parents maintain separate residences; appellee argues, however, that the only evidence available, the divorce decree, demonstrates that Aaron resided with Diane Towers. In determining the applicability of the term "reside" to these facts, traditional principles control. "Insurance policies are generally interpreted by applying rules of contract law. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law." (Citations omitted.) *Progressive Ins. Co. v. Heritage Ins. Co.* (1996), 113 Ohio App.3d 781, 783–784, 682 N.E.2d 33.

{¶ 35} The term "reside" is not defined in the policy. When a word is undefined, we examine the common meaning of the word and Ohio case law involving the language at issue. *Shear v. West Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 165, 11 OBR 478, 464 N.E.2d 545 (interpreting the term "household"). "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexan-*

*der v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

{¶ 36} In *Entenman v. Auto–Owners Ins. Co.* (2000), 136 Ohio App.3d 541, 737 N.E.2d 119, we held that minor children of divorced parents may have dual residency at both parents' homes. Id. at 547, 737 N.E.2d 119. In doing so, we rejected the bright-line test employed by *Plessinger v. Cox* (Dec. 31, 1997), 2d Dist. Nos. 1428 and 1429, 1997 WL 797689, which held that a minor child must have been under the "custody, care, supervision, and control of the insured parent at the time of the accident pursuant to the court's custody and/or visitation decree." Instead, we adopted the definition of "resident" employed by *Farmers Ins. of Columbus v. Taylor* (1987), 39 Ohio App.3d 68, 528 N.E.2d 968, and the majority of Ohio appellate courts:

{¶ 37} A resident is " '[o]ne who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor.' " *Entenman*, 136 Ohio App.3d at 547, 737 N.E.2d 119, quoting *Farmers Ins.*, 39 Ohio App.3d at 70, 528 N.E.2d 968; see, also, *Bell v. Currier*, 5th Dist. No. 02–CA–10, 2003-Ohio-3294, 2003 WL 21453054, rejecting *Plessinger* in favor of the "some duration and some regularity" test.

{¶ 38} Central to our analysis in *Entenman* was the fact that the term "resident" was not defined in the insurance policy, and insurance policies " 'may be written so as to preclude dual coverage if that be the intent of the insurer.' " 136 Ohio App.3d at 548, 737 N.E.2d 119, quoting *Taylor*, 39 Ohio App.3d at 70, 528 N.E.2d 968. Further, the term "resident" has no fixed meaning in the law, and ambiguous words will be construed in favor of coverage with " 'greater force to language that purports to limit or to qualify coverage.' " Id., quoting *Watkins v. Brown* (1994), 97 Ohio App.3d 160, 164, 646 N.E.2d 485. " 'That which is not clearly excluded from coverage is included.' " Id., quoting *Prudential Property & Cas. Co. v. Koby* (1997), 124 Ohio App.3d 174, 177, 705 N.E.2d 748.

{¶ 39} The dual-residency concept has particular force in light of children of divorced parents. Examining the plain and ordinary meaning of the word, the Second District Court of Appeals noted that the word "household" has been defined variously as " ' " those who dwell under the same roof and compose a family: * * * a social unit comprised of those living together in the same dwelling place," ' *Shear v. W. Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 166, 11 OBR 478, 481, 464 N.E.2d 545, 548, quoting Webster's Third New International Dictionary, or, alternatively, ' "the inmates of a house collectively; an organized family, including servants or attendants, dwelling in a house; a domestic estab-

lishment," ' *State Farm Fire & Cas. Co. v. Davidson* (1993), 87 Ohio App.3d 101, 106, 621 N.E.2d 887, 891, quoting the Oxford English Dictionary." *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 553, 671 N.E.2d 317. Surely children of divorced parents who are "inmates" of both parents' homes, "compose a family" in both homes, and comprise a "social unit" in both homes, are justly considered "residents" of both homes.

{¶ 40} Examining circumstances in which the dual-residency concept has been applied, the inquiry is flexible; the fact pattern of a particular case should play a significant role. *Entenman*, 136 Ohio App.3d at 549, 737 N.E.2d 119, citing *Prudential Property & Cas. Co.*, 124 Ohio App.3d at 178–179, 705 N.E.2d 748. *Entenman* listed several factors, none considered to the exclusion of others. Usual considerations include "the amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is 'legally obligated' to the person." Id. See, also, *Midwestern Indemn. Co. v. Patrick* (Jan. 16, 1997), 3d Dist. No. 12–96–06, 1997 WL 13768 (daily interaction, discipline, and financial support constitutes de facto "full parental responsibilities" and child member was of the "household" despite lack of custody). Other courts have approached the inquiry using factors more compatible with the concept of dual residency, finding dual residency for a minor child of divorced parents when "(1) the minor alternately resides with each parent under a custody or visitation arrangement; and (2) the minor's residency with each parent involves a consistent pattern between the two households for a period of some duration or regularity." *Entenman*, 136 Ohio App.3d at 549, 737 N.E.2d 119, citing *Wood v. McQueen* (Sept. 21, 1995), 8th Dist. No. 68472, 1995 WL 558925, and *Brooks v. Progressive Ins. Co.* (July 20, 1994), 9th Dist. No. 16639, 1994 WL 376768. See, also, *Bolin v. State Auto. Mut. Ins. Co.* (Mar. 25, 1988), 2d Dist. No. 87–CA–46, 1988 WL 35291 (minors residing with their mother during the week and their father on the weekends were dual residents for purposes of both the father's and stepfather/uncle's insurance policies); *Willis v. Nationwide Ins. Co.* (Dec. 30, 1986), 7th Dist. No. 86–C–22, 1986 WL 14955 (minor who resided with her mother during the week and with her father on the weekends was a resident of her father's household for purposes of his uninsured-motorist coverage); *Motorists Mut. Ins. Co. v. Henderson*, 8th Dist. No. 85557, 2005-Ohio-5148, 2005 WL 2388401, ¶ 22 (finding numerous cases in which the question of whether a person is a "resident" is a question of fact to be determined by the finder of fact).

{¶ 41} In the Towers's policy, Auto–Owners did not expressly withhold coverage from individuals with dual-residencies. This policy contains the same language found to comport with the dual-residency concept applied in cases cited previously. Each of these cases, particularly *Entenman,* demonstrates the factors that the trial court should have employed to determine whether Aaron

resided with David and Angela Towers for some duration or regularity. Applying these factors to the available evidence, genuine issues of fact remain. No evidence indicates the extent to which Aaron Towers resides with David and Angela Towers. Construing all inferences from the divorce decree and visitation schedule in appellant's favor, Aaron Towers's residency with his father may have been continuous, regular, and for some duration. Although Aaron gave his mother's address as his own to the officer investigating the accident, this is not conclusive as to whether Aaron was not a part of a family within David Towers's home, as appellee argues. We find appellant's argument on this issue well taken.

{¶ 42} Alternatively, appellee argues that even if Aaron is an insured relative of David Towers under the policy, summary judgment must still be proper because Aaron was driving a noncovered automobile. Since Diane Towers's car was not listed on the policy's declarations page, appellee argues that it was not a covered automobile. Appellant points to the policy provision excluding from coverage vehicles that are available to an insured for regular use, arguing that no evidence demonstrates whether Diane Towers's car was available to Aaron for regular use or even whether Aaron owned another car.

{¶ 43} Provisions barring coverage of vehicles available for regular use are common. See *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 589, 635 N.E.2d 19, and cases cited therein. Unlike the slippery term "resides," the phrase "regular use" is unambiguous and should be given its ordinary meaning. *Beverly v. Midwestern Indemn. Co.* (1989), 60 Ohio App.3d 139, 573 N.E.2d 1221, syllabus. The phrase does, however, require a fact-specific inquiry. Construing a similar provision, *Sanderson* held that an "automobile is not furnished for the regular use of an insured where the insured has only occasional possession of the automobile, which does not exceed ten occasions in one year." 69 Ohio St.3d 582, 635 N.E.2d 19, at paragraph four of the syllabus. Rather than establishing a bright-line test, however, *Sanderson* instead focused on whether the use was "frequent, steady, constant or systematic," id. at 589, 635 N.E.2d 19, and determined that coverage existed because the insured had only occasional possession of the automobile. Id. By comparison, the claimant in *Kenney v. Employer's Liab. Assur. Corp.* (1966), 5 Ohio St.2d 131, 34 O.O.2d 259, 214 N.E.2d 219, was denied coverage because he had the use of his employer's vehicle approximately 75 percent of the time. The court also conducted a fact-specific inquiry in *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 513 N.E.2d 733, and examined whether the insured had "sole dominion and control" over the vehicle and whether the insured was required to "secure the permission of and obtain the keys from" the owner. Id. at 343, 513 N.E.2d 733. Concluding that "regular use" was not synonymous with "regularly used," the court found the policy's exclusion inapplicable. Id.

{¶ 44} Very recently, this court, in *Hartman v. Progressive Max Ins. Co.*, 6th Dist. No. WM–05–007, 2006-Ohio-1629, 2006 WL 832915, listed " 'signposts' which are indicative of the point at which a vehicle has been furnished for 'regular use.' " Id. at ¶ 13, citing *Nationwide Ins. Co. v. Siefert* (Aug. 8, 1980), 6th Dist. No. L–79–361, 1980 WL 351460. Those "signposts" include "(1) whether the vehicle was available most of the time to the insured; (2) whether the insured made more than mere occasional use of the vehicle; (3) whether the insured needed to obtain permission to use the vehicle; (4) whether there was an express purpose conditioning use of the vehicle; and (5) whether the vehicle was being used in an area where its use would be expected." Id. No evidence supporting any of these factors exists in the record. Summary judgment on this alternative ground is therefore improper, because genuine issues of fact remain.

{¶ 45} Appellant's assignment of error is well taken. The judgment of the Fulton County Court of Common Pleas is reversed, and the cause is remanded to the trial court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.

*Judgment reversed*
*and cause remanded.*

SINGER, P.J., and PIETRYKOWSKI, J., concur.