OPINION
{¶ 1} Intervening plaintiff-appellant Erie Insurance Exchange appeals from a summary judgment rendered in favor of plaintiff-apppellee Leah McDaniel and *Page 2 
defendants-appellees John and Denise Daly. Erie contends that the trial court erred in concluding that McDaniel was not a resident relative in the Daly household for purposes of claims for bodily injury liability coverage and medical payments under a policy of insurance issued by Erie to John and Denise Daly. Alternatively, Erie contends that genuine issues of material fact existed with regard to whether Leah and her mother, Amanda Peters, were resident relatives of the Dalys for purposes of insurance coverage.
 {¶ 2} We conclude that the trial court erred in rendering summary judgment, because genuine issues of material fact exist with regard to the coverage issue. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} This case arises from a dog-bite injury sustained by Leah McDaniel, a minor child. The facts, viewed in a light most favorable to Erie, are as follows:
 {¶ 4} On May 17, 2005, Leah McDaniel was bitten by a dog while at the home of Denise and John Daly, Leah's grandmother and step-grandfather.[1] John and Denise were not at home at the time, and Leah was at the house with Amanda Peters, who is Leah's mother and Denise's daughter. Amanda had joint legal custody of Leah pursuant to a shared parenting agreement that gave Amanda physical custody of Leah and parenting time every Monday from 9:00 a.m., through Wednesday at 12:00 p.m. The shared parenting agreement was filed in early November 2004. *Page 3 
 {¶ 5} At the time the parenting agreement was filed, Amanda had been living with the Dalys for approximately three months in their home, which was located at 637 Syracuse Avenue in Dayton, Ohio. Prior to that time, Amanda had lived with her daughter's father, Lee McDaniel, since some time in the year 2001. Leah was born in January 2004. Around June 2004, Amanda moved in with the Dalys due to a dispute with Lee, and stayed there until after the shared parenting agreement was filed. While at the Dalys, Amanda slept on the couch. Although Denise offered to bring in a bed from the garage, Amanda said she preferred sleeping on the couch. When Amanda had Leah pursuant to the shared parenting plan, she brought Leah to stay at her parents' house on Syracuse Avenue.
 {¶ 6} In late November 2004, Amanda reconciled with Lee. Amanda then moved back into Lee's home and stayed there until April 11, 2005, when she and Lee again split up. Lee apparently refused to let Amanda have her belongings, so she just had a few items that she kept in a plastic bag. Amanda moved into her parents' home on Syracuse, and Lee and Amanda began following the shared parenting plan around the beginning of May. On days that Amanda had Leah, she took Leah to Syracuse Avenue and stayed with her parents. On occasions when Amanda did not have Leah, she stayed with various friends. The dog bite happened on a Tuesday afternoon, at around 2:00 p.m. Amanda and Leah had been at the house since the previous day, when Amanda had picked up Leah from Lee's house, under the shared parenting agreement. Amanda indicated that Leah loved to lounge in the morning and most of the afternoon. Accordingly, they were lounging around, just playing and watching television. With regard to the incident, Amanda testified that: *Page 4 
 {¶ 7} "Me and Leah were sitting there watching TV and doing our normal morning thing. I went and started the dishes. Sadie Mae, the dog, she already had an injured leg. She was getting ready to have surgery and Leah Beth had accidentally stepped on her leg and Sadie reacted, didn't have a chomp down but reacted to look back at Leah and her tooth got stuck in her temple." Deposition of Amanda Peters, p. 68.
 {¶ 8} Amanda called Lee, and he arrived within a few minutes to take Leah to Children's Medical Center, where both Lee and Amanda gave information to hospital personnel. Amanda filled out a "record of animal bites" form at the hospital and indicated on the form that Leah's address was 637 Syracuse.
 {¶ 9} After Leah was released from the hospital that day, Lee took Amanda back to Syracuse Avenue, and then took Leah to his parents' house. Lee reported the incident to the Montgomery County Sheriff's Department, which generated an incident report dated May 19, 2005. This report stated that "the incident occurred at 637 Syracuse, which is the residence of the child's grandparents, John and Denise Daly (274-5266). The child apparently resides at the residence with her mother, Amanda Peters."
 {¶ 10} Prior to the dog bite, Leah's driver's license listed her address as 637 Syracuse Avenue. Amanda also listed Syracuse as her mailing address for purposes of receiving child support payments and insurance information. In addition, Amanda had a key to the house.
 {¶ 11} About three weeks after the incident, or on June 10, 2005, an Erie Insurance representative took Amanda's recorded statement During the recorded *Page 5 
statement, the following exchange occurred:
 {¶ 12} "Q: Will you state your full name and spell your last name.
 {¶ 13} "A: Amanda Peters, P-E-T-E-R-S.
 {¶ 14} "Q: And what is your home address and telephone number?
 {¶ 15} "A: 637 Syracuse Avenue, Dayton, Ohio 45405, it's either 05 or 15.
 {¶ 16} "Q: Okay.
 {¶ 17} "A: (937) 274-5266.
 {¶ 18} "Q: Now, how long have you lived at this residence?
 {¶ 19} "A: Um, I just moved back in, probably in April, the beginning of April of 2005.
 {¶ 20} "Q: And where did you live before?
 {¶ 21} "A: With Lee McDaniel (inaudible).
 {¶ 22} "Q: Now. . .
 {¶ 23} "A: My daughter's dad.
 {¶ 24} "Q: How long did you live with him?
 {¶ 25} "A: Uh, we were on and off for about 4 years.
 {¶ 26} "* * *
 {¶ 27} "Q: And then, in April, you moved in with your parents?
 {¶ 28} "A: Yeah.
 {¶ 29} "Q: Is there a reason why you moved in with your parents?
 {¶ 30} "A: Because we couldn't get along.
 {¶ 31} "Q: Alright. Did you change your mailing address and at the post office and . . . ? *Page 6 
 {¶ 32} "A: No.
 {¶ 33} "Q: And all of your identification?
 {¶ 34} "A: No, my I.D. already had my parents, the 637 address on it, but.
 {¶ 35} "Q: What about your mail, was it being delivered there at, at Syracuse?
 {¶ 36} "A: Uh, some of it was being delivered here and some of it was being delivered at his house.
 {¶ 37} "Q: Okay.
 {¶ 38} "A: And I didn't have no change of address, it's just when I would write his address down on information.
 {¶ 39} "Q: Mmm. So, what did you consider your permanent, uh residence at the time this, uh, bite occurred?
 {¶ 40} "A: Here." Amanda Peters Recorded Statement, pp. 1-2.
 {¶ 41} When Amanda's deposition was taken in May 2007, she identified "here" in her recorded statement as "637 Syracuse," and indicated that she was at her mother's house when she received the call from the insurance company. Amanda also stated that she had truthfully answered the questions that were asked during the recorded statement.
 {¶ 42} After the dog bite, Amanda continued to stay at Syracuse on the days that she had custody of Leah. She testified that she "left Syracuse" in August 2005 to move back in with Lee. She, Leah, and Lee then continued to live together until a final separation occurred in December 2005.
 {¶ 43} Subsequently, in September 2006, Lee and Leah filed a complaint for personal injuries against John and Denise Daly, alleging that the Dalys' dog had caused *Page 7 
permanent injury to Leah. In November 2006, Erie was granted permission to intervene as a third-party plaintiff, and discovery ensued. Specifically, depositions were taken of Lee, Amanda, and the Dalys in March and May 2007. These depositions produced testimony that was inconsistent with Amanda's recorded statement and with documentation generated at or near the time of the injury. However, the depositions were also inconsistent with one another in many respects.
 {¶ 44} For example, Amanda indicated in her deposition that she had stayed at her parents' house with Leah on visitation days both before and after the incident, or between April and August 2005, and had also stayed there between June and November 2004, when she and Lee were battling over custody of Leah. Denise agreed that Amanda and Leah had lived with the Dalys between June and November 2004, but claimed that Amanda and Leah had never spent the night at the house in the six months before the April 2005 dog bite.
 {¶ 45} John Daly gave testimony that was inconsistent with the testimony of both Amanda and Denise. John claimed that Amanda had only brought Leah to visit three times between March 2004 and March 2007, including the day of the dog bite. He also denied that Leah had ever spent the night at the house. In turn, Lee offered testimony that contradicted the testimony of Amanda, John, and Denise. Specifically, Lee claimed that at the time of the dog bite, Amanda was living out of her car and returned periodically to his house to take showers, exchange clothes, and spend the night.
 {¶ 46} Without going into further detail about all the contradictions and inconsistencies between the testimony of the various actors, we note that both Lee and the Dalys attempted to demonstrate that Amanda and Leah were not residents of the *Page 8 
Daly household when the dog bite occurred. Amanda also indicated in her deposition that she had not been a resident of her parents' house since she moved out at age sixteen or seventeen. Amanda also stated that it was not her intention to move in and make it a place of residency.
 {¶ 47} Following the depositions, Lee and Leah moved for partial summary judgment on the issue of liability in the personal injury action. Lee and Leah also moved for summary judgment in the declaratory judgment action, contending that there were no genuine issues of material fact regarding whether Erie was required to defend and indemnify the Dalys. Erie filed its own motion for summary judgment, contending that at the time of her injury, Leah was a resident relative of the Dalys and was also a person under the age of twenty-one in the care of a resident relative of the Dalys.
 {¶ 48} In August 2007, the trial court granted summary judgment to Lee and Leah on the issue of liability and against Erie on the coverage issue. The court concluded that the terms in the Erie policy were ambiguous and should be construed against Erie. The court further concluded that Amanda Peters was not a resident of the Daly household. The court found various evidence "persuasive," including Amanda's many residences over a twelve-year period and the fact that she answered questions based on where she "lived" and not based on legal concepts as to "residence" and "household."
 {¶ 49} An agreed judgment entry was subsequently filed in September 2007, indicating that the damages proximately resulting from the dog-bite were $15,000, and entering judgment in that amount against the Dalys. The entry further provided that Leah would not execute on that judgment except to the extent that liability insurance *Page 9 
would apply after appeals were exhausted.[2]
 {¶ 50} From the summary judgment rendered against it, Erie appeals.
 II {¶ 51} Because the assignments of error are interrelated, we will discuss them together.
 {¶ 52} Erie's First Assignment of Error is as follows:
 {¶ 53} "TRIAL COURT ERRED IN OVERRULING ERIE'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING PLAINTIFFS' AND THE DALYS' MOTION FOR SUMMARY JUDGMENT, BECAUSE THE OBJECTIVE EVIDENCE INDICATES THAT LEAH MCDANIEL WAS A RESIDENT RELATIVE OF THE DALYS AND THEREFORE, AN `INSURED,' THUS EXCLUDING LEAH MCDANIEL'S CLAIMS FROM THE BODILY INJURY LIABILITY COVERAGE AND MEDICAL PAYMENTS COVERAGE UNDER THE ERIE INSURANCE CONTRACT."
 {¶ 54} Erie's Second Assignment of Error is as follows:
 {¶ 55} "THE TRIAL COURT ERRED IN OVERRULING ERIE'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING PLAINTIFFS' AND THE DALYS' MOTION FOR SUMMARY JUDGMENT, BECAUSE AT THE VERY LEAST, A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER AMANDA PETERS AND LEAH MCDANIEL WERE `RESIDENT RELATIVES' OF JOHN AND DENISE DALY AT THE TIME OF THE DOG BITE INCIDENT."
 {¶ 56} Under these assignments of error, Erie contends that at a minimum, there *Page 10 
are genuine issues of material fact regarding whether Leah and Amanda were resident relatives of the Dalys at the time of the incident. Erie also contends that the trial court should have granted Erie's motion for summary judgment because Leah was a resident of the Daly household or was a person under the age of twenty-one in the care of her mother, Amanda, who was also a resident of the Daly household.
 {¶ 57} Erie insured Denise Daly as the named insured under a "HomeProtector Policy" that had effective dates of coverage from October 10, 2004, to October 9, 2005. Under the policy, Erie agreed to pay "all sums * * * which anyone we protect becomes legally obligated to pay as damages because of bodily injury * * * caused by an occurrence during the policy period." The policy also provided for payment of "necessarymedical expenses incurred or medically determined within three years from the date of an accident causing bodily injury * * *." With respect to the medical payment coverage, the policy stated that "This coverage does not apply to you or regular residents of your household, other thanresidence employees." HomeProtectors Policy, Home and Family Liability Protection — Section II, p. 17.
 {¶ 58} The exclusions section of the policy further provided that:
 {¶ 59} "We do not cover under Bodily Injury Liability Coverage,Property Damage Liability Coverage or Personal Injury LiabilityCoverage:
 {¶ 60} "* * *
 {¶ 61} "12. Bodily injury or personal injury to you and if residents of your household, your relatives, and persons under the age of 21 in your care or in the care of your resident relatives." Id. at p. 19.
 {¶ 62} Under the policy, "you" or "your" refers to the named insured and the *Page 11 
insured's spouse, if a resident of the same household. "Resident" is defined as "a person who physically lives with you in your household." Definitions, p. 5.
 {¶ 63} Based on the policy provisions, the Dalys would have no liability coverage for bodily injury to relatives who were residents of the household. In addition, there would be no liability coverage for injuries to persons under the age of 21 who were in the care of either the Dalys or a resident relative. Thus, bodily injury liability coverage for Leah's injuries would be excluded in either of two situations: (1) if Leah physically lived in the Daly household; or (2) if Leah were under the care of a person who physically lived in the Daly household.
 {¶ 64} Medical payments coverage, which is separate from bodily liability coverage, would not exist if Leah regularly physically lived with the Dalys in their household. For summary judgment to be appropriate, there must be no genuine issues of material fact on these points.
 {¶ 65} "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." Smith v. FiveRivers MetroParks (1999), 134 Ohio App.3d 754, 760, 732 N.E.2d 422. "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." GNFH, Inc. v. W. Am. Ins. Co.,172 Ohio App.3d 127, 133, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16. Notably, "`evidence must be strongly construed in favor of the nonmoving party.' * * * Throughout the summary-judgment analysis, all inferences from *Page 12 
the evidence must weigh in the nonmoving party's favor." Auto-OwnersIns. Co. v. Merillat, 167 Ohio App.3d 148, 151, 2006-Ohio-2491,854 N.E.2d 513, at ¶ 6 (citation omitted).
 {¶ 66} In the present case, the trial court found that the terms "residents of your household" and "physically lives in your household" were ambiguous, and construed them against Erie. We review this findingde novo, because interpretation of insurance contracts is a matter of law. American States Ins. Co. v. Guillermin (1996), 108 Ohio App.3d 547,671 N.E.2d 317.
 {¶ 67} In Guillermin, we did not find the term "residents of your household" to be ambiguous. Instead, we applied the "plain and ordinary meaning" of the term "household," because it was not defined in the policy. 108 Ohio App.3d at 553. In this regard, we noted that the "plain and ordinary meaning" of the term "household" is "`"* * * those who dwell under the same roof and compose a family: * * * a social unit comprised of those living together in the same dwelling place,"'* * * or, alternatively, "`the inmates of a house collectively; an organized family, including servants or attendants, dwelling in a house; a domestic establishment * * *."'" Id. (citations omitted).
 {¶ 68} We also noted that the term "resident of your household" had been defined as "referring to `one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor.'" Id., quoting from Farmers Ins. of Columbus, Inc. v.Taylor (1987), 39 Ohio App.3d 68, 70, 528 N.E.2d 968. This definition of a household resident has been used for many years. See, e.g., AllstateIndemn. Co. v. Collister, *Page 13 
Trumbull App. No. 2006-T-0112, 2007-Ohio-5201, at ¶ 19; Motorists Mut.Ins. Co. v. Henderson, Cuyahoga App. No. 85557, 2005-Ohio-5148, at ¶ 27; and Hartong v. Makary (1995), 106 Ohio App.3d 145, 148,665 N.E.2d 704.
 {¶ 69} Although Erie's policy also defined a "resident" as an individual who "physically lives with the named insured," this does not add to, nor does it alter the meaning of the term. In Tippie v. StateFarm Mut. Auto. Ins. Co. (May 5, 1991), Warren App. No. CA90-06-044,1991 WL 71981, the Twelfth District Court of Appeals interpreted the phrase "lives with" broadly. The court noted that:
 {¶ 70} "Ohio case law consistently shows that `lives with' has been given a broad connotation by the courts. In Spychalski v. StateFarm (Mar. 17, 1989), Lucas App. No. L-88-165, unreported, the appellate court held that a minor child of divorced parents, who visited his non-custodial parent regularly on a non-temporary basis, was insured under the non-custodial father's policy. The court held in Snedegar v.Midwestern Indemnity Co., et al. (Feb. 18, 1988), Franklin App. No. 87AP-465, unreported, that a child was not precluded from being a member of his father's family unit because he was a member of his mother's family unit. Therefore, the court determined that the child was a relative as defined in his father's insurance policy because he was a person who had lived with his father periodically before the accident."1991 WL 71981, * 2-3.
 {¶ 71} We also noted in Plessinger v. Cox (Dec. 31, 1997), Darke App. No. 1428, 1997 WL 797698, that where divorced parents have custody or visitation rights, "the minor is deemed to have dual residencies for insurance purposes at least in cases where the minor is in the custody, care, supervision and control of the insured parent at the time of the action pursuant to the court's custody or visitation decree." Id. at * 4. *Page 14 
Accordingly, Leah would have physically lived in or would have been a resident of her mother's household, wherever that household happened to be.
 {¶ 72} The pertinent consideration, therefore, is whether Amanda was a resident of the Daly household. In this regard, Leah contends that Erie failed to present persuasive evidence that Amanda was a resident of the Daly household. Leah points to testimony from the involved parties (Amanda, Lee, and the Dalys) indicating that Amanda did not reside at the Daly house before the incident. This testimony mentions Amanda's somewhat "vagabond" existence, Amanda's lack of personal belongings at the Daly house, and the fact that Amanda slept on the couch on those occasions when she did stay. Leah also discounts objective evidence like the address given for driver's license and mailing purposes, claiming that they were structured in this way for purposes of convenience only. And finally, Leah focuses on Amanda's statement in her deposition that she did not intend to reside with the Dalys.
 {¶ 73} In contrast, Erie points to documentation generated before and shortly after the time of the incident, when the parties had no reason to be untruthful about the matter of residence. The documentation include Amanda's driver's license, stated mailing address, and submissions to the hospital, health district, and police, all of which designate Amanda's address as 637 Syracuse Avenue. Erie also relies on Amanda's recorded statement, acknowledged as correct during Amanda's deposition, in which she indicated that she considered Syracuse Avenue to be her permanent residence.
 {¶ 74} "When reviewing a motion for summary judgment, a court must be careful not to weigh the evidence or judge the credibility of witnesses. * * * Instead, it must consider all of the evidence and reasonable inferences that can be drawn from the *Page 15 
evidentiary materials in favor of the nonmoving party." Cox v. BarspliceProducts, Inc. (June 15, 2001), Greene App. No. 2001-CA-1,2001 WL 669336, * 1 (citations omitted).
 {¶ 75} By weighing the evidence, the trial court deviated from its assigned role in deciding summary judgment motions. On the other hand, Erie is also not entitled to summary judgment, because there are genuine issues of material fact. Erie's First Assignment of Error, therefore, is overruled. However, Erie's Second Assignment of Error is sustained, and this cause is Remanded for further proceedings
 III {¶ 76} Erie's First Assignment of Error having been overruled, and her Second Assignment of Error having been sustained, the judgment rendered in favor of Leah McDaniel, John Daly, and Denise Daly is Reversed, and this cause is Remanded for further proceedings.
WOLFF, P.J., and GRADY, J., concur.
[1] For purposes of convenience, we will refer to the parties by their first names.
[2] Lee also dismissed his claims with prejudice. *Page 1