**KOLLAR, Plaintiff,**

v.

**SMILEY et al., Defendants.**

2008-Ohio-7145.]

Court of Common Pleas of Ohio,
Medina County.

No. 07CIV1885.

Decided May 20, 2008.

Daniel Katz, for plaintiff.

Lisa W. Coulter, for defendant West American Insurance Company.

---

KIMBLER, Judge.

{¶ 1} The defendant West American Insurance Company filed a motion for summary judgment alleging that there were no issues of material fact and that as a matter of law it was entitled to a judgment. Plaintiff, Janelle Kollar, filed an opposing brief. The matter is now before the court for decision.

{¶ 2} *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, held that when a party files a motion for summary judgment, that party "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Id. at 292, 662 N.E.2d 264. Once the moving party satisfies its initial burden, the nonmoving party has the reciprocal burden outlined in the last sentence of Civ.R. 56(E). Id. at 294, 662 N.E.2d 264.

{¶ 3} *Dresher* requires this court to first examine the record and determine whether the insurance company has informed it of the basis for the motion and whether it has identified the portions of the record that show that there is no genuine issue of fact on a material element of Kollar's claim.

{¶ 4} An examination of the motion shows that the insurance company is arguing that the contract that existed between Kollar's father and itself did not provide coverage under the uninsured/underinsured-motorist portion of the policy for the car that Kollar was driving when she was involved in the accident with a Mr. Smiley. In support of that motion, the insurance company directed the insurance company to the deposition of Kollar, which it took and filed, and the affidavit of a Diana Gardner.

{¶ 5} Gardner is an employee of the Ohio Casualty Group, which is the company that owns West American Insurance Company. Gardner's affidavit establishes that she swore to the facts contained in the affidavit based on her personal knowledge. In the affidavit, Gardner assets that the copy of the insurance policy attached to the motion for summary judgment is an accurate copy of the policy and that one of her duties is to prepare such copies for litigation.

{¶ 6} In her reply, Kollar doesn't dispute that the copy provided by the insurance company has been authenticated by Gardner's affidavit. Nor does she point to any evidence in the record that would show that there is a genuine issue of material fact as to whether the copy provided by the insurance company is an

accurate copy of the policy that existed between Kollar's father and West American Insurance Company. Therefore, this court finds that the copy of the policy attached to the motion for summary judgment is an accurate copy.

{¶ 7} West American's motion is based on the language in the policy in the section describing uninsured/underinsured-motorist coverage. The contract requires that a person seeking coverage under that section be either the insured or a family member of the insured. Because Kollar is the daughter of the policy holder, she meets the first condition. The contract then requires that the person seeking coverage be "occupying" a "covered auto."

{¶ 8} There is no dispute that Kollar was "occupying" an auto when the accident with Smiley took place, but the problem is that it wasn't a "covered auto" as that term is defined in the policy. In order to be a "covered" auto, the vehicle must be listed on the declarations page, be a "newly acquired" auto, or be a temporary substitute for a "covered auto." The vehicle that Kollar was occupying at the time of the accident doesn't meet this definition.

{¶ 9} In her brief opposing the motion for summary judgment, Kollar argues that this court shouldn't apply the definition of a "covered auto" that appears in the policy. She argues that this court should apply the reasoning of *Auto–Owners Ins. Co. v. Merillat,* 167 Ohio App.3d 148, 2006-Ohio-2491, 854 N.E.2d 513. *Merillat,* however, is not applicable to this case.

{¶ 10} *Merillat* dealt with the issue of whether the term "resides" was ambiguous. In that case Merillat was a passenger in a car driven by a friend who was the son of divorced parents. The issue was whether, for terms of uninsured- or underinsured-motorist coverage, he resided with his father even though his mother was listed in the divorce decree as the custodial parent. The Court of Appeals for the Sixth Appellate District, sitting as the Fulton County Court of Appeals, found that the term was ambiguous and that summary judgment was not appropriate.

{¶ 11} That decision involved a policy that was issued when a prior version of R.C. 3937.18 was in effect. R.C. 3937.18 was amended by 2001 Senate Bill 97. This was the version of R.C. 3937.18 that was in effect at the time that the West American Insurance Company policy was issued to Kollar's father.

{¶ 12} Prior to the passage of Senate Bill 97, R.C. 3937.18 was a remedial statute. The problem that it addressed was that Ohioans were being injured by tortfeasors who didn't have insurance. The remedy was to require insurance companies issuing automobile liability policies in Ohio to offer uninsured- and underinsured-motorist coverage. Because R.C. 3937.18 was a remedial statute, any ambiguity in the statute was resolved in favor of effectuating the remedy. This meant that any language in any contract issued pursuant to R.C. 3937.18,

which used ambiguous language from the statute, was also going to be construed in favor of effectuating the remedy.

{¶ 13} This changed with the passage of Senate Bill 97. It was no longer mandatory for insurance companies to offer such coverage. The effect of that change was to change the whole thrust of R.C. 3937.18. The statute was no longer a remedial statute. Uninsured- and underinsured-motorist coverage became subject to ordinary contract principles.

{¶ 14} In *Green v. Westfield Ins. Co.*, Medina App. No. 06CA0025–M, 2006-Ohio-5057, 2006 WL 2788192, the Court of Appeals for the Ninth Appellate District wrote the following concerning Senate Bill 97 at ¶ 19:

{¶ 15} "Section 3 of Senate Bill 97 clearly demonstrates that it was the intent of the legislature to: (1) eliminate the requirement of mandatory UM/UIM coverage; (2) eliminate UM/UIM coverage being implied as a matter of law in any insurance policy; and (3) to provide statutory authority for including exclusions or other limitations in UM/UIM coverage should it be offered by the insurer. This stated intent is consistent with the plain language of the statute as amended. In fact, numerous sections of R.C. 3937.18, not just (I)(1), allow the insurer to include terms and provisions. See R.C. 3937.18(F); (G); (H)."

{¶ 16} In the present case, the terms and conditions that West American Insurance Company put in the policy issued to Mr. Kollar was that the person claiming the UM/UIM coverage had to be "occupying" a "covered auto." Under the reasoning of *Green*, this limitation on such coverage is authorized by R.C. 3937.18.

{¶ 17} If this court were to rule in favor of Kollar's position on West American Insurance Company's motion, it would, in essence, be finding an ambiguity that doesn't exist. This court does not have the power to change the plain meaning of an insurance contract. This concept was explained in a recent decision of the Ohio Supreme Court, *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, when that court wrote the following at ¶ 7 and 8:

{¶ 18} " 'An insurance policy is a contract whose interpretation is a matter of law.' " *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. In *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11, we stated, When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See also Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole

and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423.'

{¶ 19} "Ambiguity in an insurance contract is construed against the insurer and in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy. *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus."

{¶ 20} Therefore, construing the plain language of the contract between the insurance company and Kollar, this court finds that there is no genuine issue of material fact and that, as a matter of law, the West American Insurance Company is entitled to judgment on both the breach-of-contract claim and the bad-faith claim.

So ordered.