[Cite as *Goodville Mut. Cas. Co. v. Brenner*, 2021-Ohio-2252.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

| | |
|---|---|
| Goodville Mutual Casualty Company | Court of Appeals No. WM-20-007 |
| Appellee | Trial Court No. 19 CI 081 |
| v. | |
| Virginia C. Brenner, et al. | **DECISION AND JUDGMENT** |
| Appellants | Decided: June 30, 2021 |

* * * * *

Peter C. Munger, for appellees.

Robert A. Rutter, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellants, Virginia Brenner and Amber Osmun, appeal the August 17, 2020 judgment of the Williams County Court of Common Pleas granting summary judgment in favor of appellee, Goodville Mutual Casualty Company ("Goodville"). For the following reasons, we affirm the trial court's judgment.

## A.  Facts and Procedural Background

On September 6, 2019, Goodville filed a declaratory judgment action pursuant to Civ.R. 57 and R.C. Chapter 2721, asking the trial court to declare the rights of the parties under a homeowner's insurance policy it issued to Brenner for property located at 10439 County Road 10A in Bryan, Ohio, following a fire which occurred on January 13, 2019. The policy's declarations page identifies coverages for a residence, related private structures, personal property, and additional living costs and loss of rents.  Relevant to this appeal, the residence coverage refers to a farmhouse while the related private structures coverage refers to a two-story detached garage structure located approximately 150 feet from the farmhouse.  The garage consisted of a first-floor storage area and a second-floor apartment.  At the time of the fire, Brenner resided in the farmhouse. Osmun, Brenner's granddaughter, resided in the apartment with her son.  The fire destroyed the detached garage structure, including the storage area and the apartment, and all of their contents.  The farmhouse was not damaged.

{¶ 2} Brenner filed a claim for the damage to the structure and for her personal property which was destroyed.  Osmun also filed a claim for her damaged personal property.  On April 25, 2019, Brenner and Osmun appeared for an examination under oath regarding their respective personal property claims.[1]

---

[1] Osmun's examination was suspended pending additional document production and was completed on July 22, 2019.

2.

{¶ 3} In their testimony, it was revealed that Brenner had purchased insurance coverage for the property from Goodville annually since 2007 when her husband passed away. Osmun and her son resided in the farmhouse for nearly ten years prior to moving into the apartment in the spring of 2018. Osmun indicated that she moved into the apartment after Brenner's prior renters—Osmun's cousins—vacated the premises. Brenner did not keep any personal property in the apartment. Brenner did keep some personal property in the garage beneath the apartment. Brenner did not purchase any separate insurance coverage for the property of any renters that might occupy the apartment. Osmun likewise did not purchase any renter's insurance for her personal property or contact Brenner's agent to inquire about obtaining renter's insurance when she moved into the apartment.

{¶ 4} Both the farmhouse and the apartment share a single address. The utility bills for each structure were separate but both were in Brenner's name. Brenner paid the utility bills for the farmhouse and gave Osmun the apartment's utility bills for payment. Brenner performed all of her daily activities—cooking, cleaning, etc.—in the farmhouse. Brenner had never slept in the apartment and Osmun and her son did not sleep in the farmhouse from the time they moved into the apartment until the date of the fire. Brenner testified that she furnished the apartment with appliances prior to Osmun moving in but Osmun testified that she and Brenner purchased the appliances together.

{¶ 5} There was some dispute between Brenner and Osmun as to the status of the property and rent payments. The parties agree that their intention was to ultimately

3.

transfer the entirety of the property to Osmun after she moved into the apartment. Brenner believed that she was still the owner of the property at the time of the fire. Brenner also testified that Osmun paid her monthly rent once she moved into the apartment. Osmun testified, however, that she did not pay monthly rent and that on June 19, 2018, Brenner executed a quitclaim deed transferring ownership of the property to Osmun. Osmun testified that she would be taking over the mortgage on the property but that process had not yet been completed at the time of the fire.

{¶ 6} In conjunction with that transfer, Brenner and Osmun executed a lease agreement which granted Brenner a 99-year lease to remain on the property. The lease identified Osmun as the "landlord" and Brenner as the "tenant." The lease agreement does not require a monthly rent payment. Despite that, Osmun testified that Brenner pays her $400 per month which Osmun uses to pays the $811 monthly mortgage payment. Neither Brenner nor Osmun advised Goodville of the transfer of ownership.[2] Brenner testified that she paid all of the Goodville insurance premiums from the time Osmun moved into the apartment. Osmun testified that she gave Brenner $100 in cash each month to pay toward the insurance premium. Osmun also testified that she paid the sole real estate tax bill that had come due between the transfer of ownership and her examination under oath. Appellants did not provide any evidence of any of the rent, utility, or tax payments.

---

[2] Any issues related to ownership of the property and whether appellants were required to notify Goodville of the transfer of ownership were not addressed in this declaratory judgment action and are not before this court.

4.

{¶ 7} Following the examinations, Goodville filed their declaratory judgment action alleging that Osmun was not an "insured" as defined by the policy. Brenner and Osmun filed their joint answer generally denying Goodville's allegations along with a counterclaim for declaratory judgment requesting the trial court find that Osmun was an "insured" under the Goodville policy.

{¶ 8} The policy includes the following relevant definitions:

1. The words "your' and "your" mean the person or persons named as the insured on the "declarations."

* * *

13. "Insured" means:

a. "you";

b. "your" relatives if residents of "your" household[.]

The policy does not define "resident" or "household."

{¶ 9} Goodville filed a motion for summary judgment on March 5, 2020, arguing that although Osmun was a relative of Brenner's, she was not a member of Brenner's household and, therefore, not an "insured." Brenner and Osmun filed their cross-motion for summary judgment on April 15, 2020 arguing that Osmun was an "insured" under the terms of the policy.

{¶ 10} On August 17, 2020, the trial court granted Goodville's motion for summary judgment and denied appellant's cross-motion for summary judgment. The

trial court found that Osmun was not a resident of Brenner's household under the plain meaning of those terms and, therefore, was not an "insured" as defined in the policy.

## B. Assignment of Error

{¶ 11} Appellants timely appealed and assert the following errors for our review:

1. The trial court erred in concluding that the term "household" was not ambiguous in the context of a case where the residence consists of a structure and related structure;

2. The trial court erred in concluding that the only plain and ordinary meaning of "household" was the definition found in Websters (sic) Dictionary, and not the definition found in Black's law Dictionary;

3. The Trial Court erred in concluding that the structure and related structure were not considered "under the same roof."

## II. Analysis

{¶ 12} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that

6.

conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 13} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C); *Dresher* at 292–293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293. The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party. *Id.* at 293. We find that the trial court did not err in granting summary judgment in favor of Goodville. Because they are interrelated, we address appellants' first and second assignments of error together.

**A. The policy definition "resident of your household" is not ambiguous.**

{¶ 14} In their first and second assignments of error, appellants argue that the trial court erred in finding that the term "household" was not ambiguous. Specifically, appellants argue that because the policy does not define "household" and because multiple dictionaries define "household," that the term is ambiguous and should have resulted in coverage for Osmun's personal property claim.

7.

{¶ 15} We review the interpretation of an insurance policy as a matter of law. *Buehrer v. Meyers,* 155 N.E.3d 222, 2020-Ohio-3207, ¶ 13. "It is well settled that 'insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.'" *Id.* at ¶ 14, citing *Rhoades v. Equitable Life Assur. Soc. Of U.S.,* 54 Ohio St.2d 45, 47, 374 N.E.2d 643 (1979). "As we examine the contract as whole, we presume that the parties' intent is reflected in the language used. When the policy language is clear, the court may look no further to find the intent of the parties." *Id.,* citing *Houston v. Liberty Mut. Fire Ins. Co.*, 6th Dist. Lucas No. L-04-1161, 2005-Ohio-4177, ¶ 36. However, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

{¶ 16} In granting summary judgment, the trial court found that the term "household" was not ambiguous. The trial court relied on the Ohio Supreme Court's holding in *Shear v. W.Am. Ins. Co.,* 11 Ohio St.3d 162, 464 N.E.2d 545 (1984), which found that the plain meaning of the term "household" in an insurance policy was "those who dwell under the same roof * * * a social unit comprised of those living together in the same dwelling place." The trial court cited Brenner's testimony that Osmun was renting the apartment from her as evidence that Osmun was not residing under the same

8.

roof as Brenner and, therefore, not an insured. Appellant argues that the trial court erroneously limited its definition of "household" to those living under the same roof. Instead, appellants argue, the term "household" is ambiguous and capable of more than one interpretation which should have been construed in favor of coverage for Osmun's claim.

{¶ 17} Having reviewed the record de novo, we find that the term "household" as used in the Goodville policy is not ambiguous as a matter of law. In *Shear,* the Ohio Supreme Court defined "household" utilizing Webster's Third New International Dictionary as "those who dwell under the same roof and compose a family: * * * a social unit comprised of those living together in the same dwelling place[.]" *Shear* at 166. This court, along with others throughout the state, have relied on this definition of household when interpreting similar policy definitions. *See Auto-Owners Insurance Co. v. Merillat,* 167 Ohio App.3d 148, 2006-Ohio-2491, 845 N.E.2d 513, ¶ 39 (6th Dist.); *Felton v. Nationwide Mut. Fire Ins. Co.*, 163 Ohio App.3d 436, 2005-Ohio-4792, 839 N.E.2d 34 (9th Dist.); *Doe v. Magro,* 1st Dist. Hamilton No. C-130409, 2014-Ohio-1202, ¶ 12.

{¶ 18} Appellants argue that the trial court should not have limited its definition of "household" to those residing "under the same roof" or "in the same dwelling place." Instead, appellants argue that the trial court should have considered one of several other dictionary definitions of household including Black's Law Dictionary ("a family living together" and "a group of people who dwell under the same roof"), Collin's Dictionary ("a household is all the people in a family group who live together in a house"), and

9.

Lexico ("a house and its occupants regarded as a unit"). Appellants contend that since there is more than one definition of "household" that the term is ambiguous. Appellant's argument, however, ignores the fact that each of these additional definitions all contain substantially the same provision to which they object—that is, a common dwelling unit. Appellants do not identify any other applicable definition which does not include this common dwelling requirement. Appellants, therefore, have failed to show that the policy's use of the term "household" is reasonably susceptible to more than one interpretation. *See King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380 at syllabus.

{¶ 19} For these reasons, we find that the trial court did not err in finding that the term "household" as used in the Goodville policy was not ambiguous. We also find that the trial court did not err in determining that the plain and ordinary meaning of "household" is limited to those residing in the same dwelling place. Therefore, appellants' first and second assignments of error are found not well-taken.

### B. Appellant Osmun was not a member of Brenner's household when she resided in the related private structure.

{¶ 20} In their third assignment of error, appellants argue that the trial court erred when it determined that the farmhouse and the detached garage were not a single dwelling place. Appellants argue that because the structures share a single address, appellants share household items, and that the policy declarations page identifies the detached garage as a "related structure," that appellants intended to be considered members of the same household despite not living "under the same roof." Stated another

10.

way, appellants argue that there are genuine issues of material fact regarding whether they were members of the same household, even when utilizing the definition from *Shear*, that precludes summary judgment. We disagree.

{¶ 21} Summary judgment can only be granted when there are no material facts in dispute. Civ.R. 56(C). A "material fact" is one which would affect the outcome of the suit under the applicable substantive law. *Turner v. Cathedral Ministries*, 6th Dist. No. S-14-020, 2015-Ohio-633, ¶ 9. There are no material facts in dispute which would preclude the granting of summary judgment in Goodville's favor.

{¶ 22} The disputed facts in this case are not material. Brenner testified that Osmun lived as her tenant in the apartment and paid her a monthly rent. Osmun, in turn, testified that she was the owner of the property and that Brenner was her tenant. Osmun's testimony was supported by a signed lease agreement which identified the relationship of the parties as landlord and tenant. In either scenario, Brenner and Osmun are in a landlord and tenant relationship, not members of the same social unit. These facts, while disputed, do not suggest that Brenner and Osmun were members of the same household. As a result, they are not material facts which would preclude summary judgment.

{¶ 23} In contrast, the undisputed facts show that Brenner and Osmun were not members of the same household. It is undisputed that Brenner purchased insurance coverage for the related structure as a "family rental." Brenner's policy includes

11.

coverage for "loss of rent" which pays Brenner "the fair rental value * * * rented or held for rental to others * * * if it is made unfit for use as a residence by a [covered loss.]" In addition to that general coverage, Brenner also purchased a separate endorsement for the "Related Private Structures *Rented to Others*" (emphasis added). This endorsement describes which terms and exclusions from the homeowner's policy were applicable to the "family rental." The endorsement specifically states that the policy's "business" exclusion did not apply to coverage for the rental property, allowing Brenner to rent the apartment without affecting the policy's coverage for the structure itself. Put simply, Brenner and Goodville's anticipated use of the apartment was as a rental property from which Brenner could earn income, not an extension of Brenner's household.

{¶ 24} This is consistent with Brenner's testimony regarding her relationship with Osmun. When describing their living situation, Brenner described Osmun as her "neighbor." Brenner testified that she had limited knowledge of Osmun's activities because she wanted to afford Osmun her privacy. Brenner also stated that she did not regularly enter the apartment while Osmun resided there and categorically stated that other than the furnished appliances, her "personal things" would not have been in the apartment. Notably absent from Brenner's testimony is any indication that she interacted with Osmun as anything other than as a neighbor despite their familial relationship. All of these facts indicate that the apartment was not an extension of Brenner's household but a separate residence for her tenants.

12.

**{¶ 25}** Appellants' argument relies principally on the fact that Brenner and Osmun shared the same address. Such a fact, however, is legally unavailing. A shared address is not sufficient to overcome the evidence that shows Osmun was not a member of Brenner's household. *See Grange Ins. Co. v. Stubbs,* 10th Dist. Franklin No. 11AP-163, 2011-Ohio-5620 (holding that "household" refers to the living arrangements of the family unit of the insured and not to the address listed on the declarations page).

**{¶ 26}** In sum, there are no facts which show appellants were dwelling "under the same roof" or members of the same "social unit comprised of those living together in the same dwelling place." *Shear,* 11 Ohio St.3d at 166, 464 N.E.2d 545. Therefore, we find that there are no material facts in dispute and, viewing the evidence in favor of appellants, that Goodville is entitled to judgment as a matter of law. Osmun was not a member of Brenner's household and was not an insured under the plain and ordinary terms of Brenner's policy with Goodville. For these reasons, we find summary judgment in favor of Goodville was proper and appellant's third assignment of error is not well-taken.

### III. Conclusion

**{¶ 27}** We find each of appellants' assignments of error not well-taken and affirm the August 17, 2020 judgment of the Williams County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.
                                  _____

Gene A. Zmuda, P.J.
                                          JUDGE

                                  _____

Myron C. Duhart, J.
                                          JUDGE
CONCUR.

                                  _____

                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.